Carl M. MILES, et al.,
Plaintiffs-Appellants,

v.

CITY COUNCIL OF AUGUSTA, GEORGIA, et al., Defendants-Appellees.

No. 82-8766
Non-Argument Calendar.

United States Court of Appeals,
Eleventh Circuit.

Aug. 4, 1983.

N. Kenneth Daniel, Augusta, Ga., for defendants-appellees.

---

Before TJOFLAT, JOHNSON and HATCHETT, Circuit Judges.

## PER CURIAM:

Plaintiffs Carl and Elaine Miles, owners and promoters of "Blackie the Talking Cat," brought this suit in the United States District Court for the Southern District of Georgia, challenging the constitutionality of the Augusta, Georgia, Business License Ordinance. Their complaint alleged that the ordinance is inapplicable in this case or is otherwise void for vagueness and overbroad, and that the ordinance violates rights of speech and association. The district court granted summary judgment in favor of the defendant City Council of Augusta. *Miles v. City of Augusta,* 551 F.Supp. 349 (S.D.Ga.1982). We affirm.

The partnership between Blackie and the Mileses began somewhat auspiciously in a South Carolina rooming house. According to the deposition of Carl Miles:

Well, a girl come around with a box of kittens, and she asked us did we want one. I said no, that we did not want one. As I was walking away from the box of kittens, a voice spoke to me and said, "Take the black kitten." I took the black kitten, knowing nothing else unusual or nothing else strange about the black kitten. When Blackie was about five months old, I had him on my lap playing with him, talking to him, saying I love you. The voice spoke to me saying, "The cat is trying to talk to you." To me, the voice was the voice of God.

Mr. Miles set out to fulfill his divination by developing a rigorous course of speech therapy.

I would tape the sounds the cat would make, the voice sounds he would make when he was trying to talk to me, and I would play those sounds back to him three and four hours a day, and I would let him watch my lips, and he just got to where he could do it.

Blackie's catechism soon began to pay off. According to Mr. Miles:

He was talking when he was six months old, but I could not prove it then. It was where I could understand him, but you can't understand him. It took me altogether a year and a half before I had him talking real plain where you could understand him.

Ineluctably, Blackie's talents were taken to the marketplace, and the rest is history. Blackie catapulted into public prominence when he spoke, for a fee, on radio and on television shows such as "That's Incredible." Appellants capitalized on Blackie's linguistic skills through agreements with agents in South Carolina, North Carolina, and Georgia. The public's affection for Blackie was the catalyst for his success, and Blackie loved his fans. As the District Judge observed in his published opinion, Blackie even purred "I love you" to him when he encountered Blackie one day on the street.[1]

Sadly, Blackie's cataclysmic rise to fame crested and began to subside. The Miles family moved temporarily to Augusta, Georgia, receiving "contributions" that Augusta passersby paid to hear Blackie talk. After receiving complaints from several of Augusta's ailurophobes, the Augusta police—obviously no ailurophiles themselves[2]—doggedly insisted that appellants would have to purchase a business license. Eventually, on threat of incarceration, Mr. and Mrs. Miles acceded to the demands of the police and paid $50 for a business license.

The gist of appellant's argument is that the Augusta business ordinance contains no category for speaking animals. The ordinance exhaustively lists trades, businesses,

1. We note that this affectionate encounter occurred before the Judge ruled against Blackie. *See Miles, supra,* 551 F.Supp. at 350 n. 1.

2. *See* 551 F.Supp. at 351 n. 2.

and occupations subject to the tax and the amount of the tax to be paid, but it nowhere lists cats with forensic prowess. However, section 2 of Augusta's Business Ordinance No. 5006 specifies that a $50 license shall be paid by any "Agent or Agency not specifically mentioned." Appellants insist that the drafters of section 2 could not have meant to include Blackie the Talking Cat and, if they did, appellants assert that section 2, as drafted, is vague and overbroad and hence unconstitutional.

Upon review of appellants' claims, we agree with the district court's detailed analysis of the Augusta ordinance. The assertion that Blackie's speaking engagements do not constitute an "occupation" or "business" within the meaning of the catch-all provision of the Augusta ordinance is wholly without merit. Although the Miles family called what they received for Blackie's performances "contributions," these elocutionary endeavors were entirely intended for pecuniary enrichment and were indubitably commercial.[3] Moreover, we refuse to require that Augusta define "business" in order to avoid problems of vagueness. The word has a common sense meaning that Mr. Miles undoubtedly understood.[4]

Appellants' attack on the vagueness of section 4 of the Augusta ordinance, which permits the mayor, in his discretion, to require a license, is not properly before this Court. As the district court indicated, defendants sought to enforce only section 2 of the ordinance in this case. 551 F.Supp. at 354.

Finally, we agree with the district court that appellants have not made out a case of overbreadth with respect to section 2 of the ordinance. Appellants fail to show any illegal infringement of First Amendment rights of free speech[5] or assembly. The overbreadth of a statute must be "judged in relation to the statute's plainly legitimate sweep." *Broadrick v. Oklahoma,* 413 U.S. 601, 615, 93 S.Ct. 2908, 2918, 37 L.Ed.2d 830 (1973). Appellants' activities plainly come within the legitimate exercise of the city's taxing power.

AFFIRMED.

---

3.  This conclusion is supported by the undisputed evidence in the record that appellants solicited contributions. Blackie would become catatonic and refuse to speak whenever his audience neglected to make a contribution.

4.  As found by the district court, Mr. Miles had previously inquired as to the necessity of obtaining a business license in Charlotte, North Carolina, and in Columbia, South Carolina. 551 F.Supp. at 353.

5.  This Court will not hear a claim that Blackie's right to free speech has been infringed. First, although Blackie arguably possesses a very unusual ability, he cannot be considered a "person" and is therefore not protected by the Bill of Rights. Second, even if Blackie had such a right, we see no need for appellants to assert his right *jus tertii.* Blackie can clearly speak for himself.