Jeffrey L. GAMMON, individually and on behalf of all others similarly situated, Plaintiff–Appellant,

v.

GC SERVICES LIMITED PARTNER-SHIP, Defendant–Appellee.

No. 93–3403.

United States Court of Appeals, Seventh Circuit.

Argued April 4, 1994.

Decided June 24, 1994.

Lawrence W. Schad, James Shedden (argued), David J. Philipps, Beeler, Schad & Diamond, Chicago, IL, for plaintiff-appellant.

Terry F. Moritz, Daniel P. Shapiro (argued), Heidi A. Wagman, Goldberg, Kohn, Bell, Black, Rosenbloom & Moritz, Chicago, IL, for defendant-appellee.

Before CUDAHY, EASTERBROOK, and KANNE, Circuit Judges.

KANNE, Circuit Judge.

"We provided the systems used by a major branch of the federal government and various state governments to collect delinquent taxes.... You must surely know the problems you will face later if you do not pay." Is the implication for the debtor who receives this communication from a collection agency that the agency worked with the government to collect delinquent taxes and that the debtor could be in trouble with the government if he doesn't pay his delinquent bill?

In this case GC Services Limited Partnership, a debt collection agency, mailed Jeffrey Gammon a form collection letter containing the following language:

> Your account with American Express has been referred to us for immediate attention.

> You should know that we are an experienced collection agency. *We provided the systems used by a major branch of the federal government and various state governments to collect delinquent taxes.*

> We have collected millions of accounts from people in similar circumstances. Now we intend to collect your debt. We know what we are doing, and we are very efficient. We have handled every kind of account—and dealt with every kind of excuse.

> *You must surely know the problems you will face later if you do not pay.* Send us your payment in full in the enclosed envelope, which is directed to the post office box

we maintain for American Express accounts.

(emphasis added).

The federal law which deals with collection practices by debt collectors, the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692e, provides in pertinent part:

A debt collector may not use any false, deceptive, or misleading representation or means in connection with the collection of any debt. Without limiting the general application of the foregoing, the following conduct is a violation of this section:

(1) The false representation or implication that the debt collector is vouched for ... or affiliated with the United States or any State....

Gammon filed this class action under section 1692e, seeking injunctive relief and damages against GC Services. In his complaint, Gammon alleged that the statement in GC Services' letter professing that it provided collection systems to federal and state governments "connotes that GC is vouched for or is affiliated with or is acting on behalf of both federal and state government in connection with collection of this debt."

### Dismissal of Claim for Lack of Subject Matter Jurisdiction

Based on an initial review of Gammon's complaint, the district court dismissed the case *sua sponte* for lack of subject matter jurisdiction. The court opined that it was "an impermissible strain on the English language to assert that, by making such a concededly truthful statement, GC has somehow represented or implied that it is 'vouched for, bonded by, or affiliated with the United States or any State.'"

We review *de novo* dismissals for lack of subject matter jurisdiction. *Joyce v. Joyce*, 975 F.2d 379, 382 (7th Cir.1992).

■ The Supreme Court has repeatedly held that "federal courts are without power to entertain claims otherwise within their jurisdiction if they are 'so attenuated and unsubstantial as to be absolutely devoid of merit.'" *Hagans v. Lavine*, 415 U.S. 528, 536, 94 S.Ct. 1372, 1378–79, 39 L.Ed.2d 577 (1974) (citations omitted). This "substantiali-

ty doctrine" dictates that before a district court may entertain a claim for recovery under the Constitution or federal statutes, it must conduct an initial review of the face of the complaint to determine whether the merits are sufficiently substantial to engage the subject matter jurisdiction of the court. *See, e.g., Ricketts v. Midwest Nat'l Bank*, 874 F.2d 1177, 1180–82 (7th Cir.1989). If the court determines that the claim is "wholly insubstantial and frivolous," the court does not have the power to decide the case and the complaint must be dismissed for lack of subject matter jurisdiction. *Id.* at 1182 (citing *Bell v. Hood*, 327 U.S. 678, 681–82, 66 S.Ct. 773, 774–76, 90 L.Ed. 939 (1946)). *See also Joyce v. Joyce*, 975 F.2d 379, 383 n. 3 (7th Cir.1992) (citing cases).

■ Although similar to the standard for dismissal for failure to state a claim upon which relief can be granted under Fed. R.Civ.P. 12(b)(6), the standard for dismissal for want of subject matter jurisdiction is considerably more rigorous. In *Ricketts*, we noted that the Supreme Court has used "exacting adjectives to define the degree of insubstantiality required before a case is to be dismissed...." 874 F.2d at 1182. A claim must be "wholly insubstantial," or "obviously frivolous," "plainly unsubstantial," or "no longer open to discussion," to merit dismissal under the substantiality doctrine. *See Hagans*, 415 U.S. at 537, 94 S.Ct. at 1379. However, we have previously held that if remanding a case dismissed for want of subject matter jurisdiction would be futile because appellant has also failed to state a claim upon which relief can be granted, we will affirm the district court, even though the dismissal for lack of subject matter jurisdiction was improper. *Shockley v. Jones*, 823 F.2d 1068, 1073 (7th Cir.1987); *White v. Elrod*, 816 F.2d 1172, 1176 (7th Cir.1987), *cert. denied*, 484 U.S. 924, 108 S.Ct. 286, 98 L.Ed.2d 246 (1987). Because we hold that Gammon's complaint successfully states a claim upon which relief can be granted, it logically follows that we believe the claim is not so insubstantial or frivolous on its face as to warrant dismissal for lack of subject matter jurisdiction. Therefore, we reverse.

### Debt Collection and Consumer Sophistication

 The district court viewed Gammon's claim "through the lens of the 'least sophisticated debtor' or 'least sophisticated consumer'" standard. In *Clomon v. Jackson,* 988 F.2d 1314 (2d Cir.1993), the Second Circuit explained that the widely-adopted least sophisticated consumer standard was grounded in an effort to effectuate the goal of consumer protection laws by protecting "consumers of below-average sophistication or intelligence" who are "especially vulnerable to fraudulent schemes." *Id.* at 1319. Despite the absolute term "least," the Second Circuit maintained that "in crafting a norm that protects the naive and the credulous the courts have carefully preserved the concept of reasonableness" in the least sophisticated consumer standard. *Id.* It pointed out that courts have held that "even the 'least sophisticated consumer' can be presumed to possess a rudimentary amount of information about the world and a willingness to read a collection notice with some care." *Id.* at 1319. Thus, it concluded, the standard effectively "protects debt collectors against liability for bizarre or idiosyncratic interpretations of collection notices." *Id.* at 1320.

We agree with much of the analysis set forth by the Second Circuit in *Clomon;* however, we believe that a modification of the least sophisticated consumer standard as articulated in cases such as *Clomon*[1] would relieve the incongruity between what the standard would entail if read literally, and the way courts have interpreted the standard.

It strikes us virtually impossible to analyze a debt collection letter based on the reasonable interpretations of the least sophisticated consumer. Literally, the least sophisticated consumer is not merely "below average," he is the very last rung on the sophistication ladder. Stated another way, he is the single most unsophisticated consumer who exists. Even assuming that he would be willing to do so, such a consumer would likely not be able to read a collection notice with care (or at all), let alone interpret it in a reasonable fashion. Courts which use the "least sophisticated consumer" test, however, routinely blend in the element of reasonableness. *See Clomon,* 988 F.2d at 1319.

In maintaining the principles behind the enactment of the FDCPA, we believe a simpler and less confusing formulation of a standard designed to protect those consumers of below-average sophistication or intelligence should be adopted. Thus, we will use the term, "unsophisticated," instead of the phrase, "least sophisticated," to describe the hypothetical consumer whose reasonable perceptions will be used to determine if collection messages are deceptive or misleading. We reiterate that an unsophisticated consumer standard protects the consumer who is uninformed, naive, or trusting, yet it admits an objective element of reasonableness. The reasonableness element in turn shields complying debt collectors from liability for unrealistic or peculiar interpretations of collection letters.

### Application of Standard

 Applying the standard to this case, we conclude that an unsophisticated consumer reasonably could interpret the statement, "We provided the systems used by a major branch of the federal government and various state governments to collect delinquent taxes," to imply that those governmental bodies vouch for or are affiliated with GC Services. Thus, Gammon has sufficiently stated a claim upon which relief can be granted. By prohibiting representations by debt collectors that they are "affiliated with" or "vouched for" by a governmental entity, the FDCPA forbids a range of implications wider than merely the direct representation that the debt collector is or is a part of state or federal government. "Affiliate" is defined as "signify[ing] a condition of being united; being in close connection, allied, associated, or attached as a member or branch."

---

1. *See, e.g., Bentley v. Great Lakes Collection Bureau,* 6 F.3d 60, 62 (2d Cir.1993); *Smith v. Transworld Sys., Inc.,* 953 F.2d 1025, 1028 (6th Cir.1992); *Graziano v. Harrison,* 950 F.2d 107, 111 & n. 5 (3d Cir.1991) ("least sophisticated debtor"); *Swanson v. Southern Oregon Credit Serv., Inc.,* 869 F.2d 1222, 1225 (9th Cir.1988) (same); *Jeter v. Credit Bureau,* 760 F.2d 1168, 1175 (11th Cir.1985).

Black's Law Dictionary 58 (6th ed. 1990). To "vouch" is defined as "[t]o give personal assurance or serve as a guarantee." *Id.* at 1577.

■ The language in the collection letter appears to be cleverly drafted in order to insinuate what obviously cannot be stated directly. It is difficult to imagine what end GC Services intended to accomplish with its statement other than the intimidation of unsophisticated consumers with the power of having the tax collecting units of the federal and state governments in its corner, or at least at its disposal. It would seem that GC Services had no reason to mention specifically its state and federal government clients in the letter except to leave the impression that it is closely involved with these governmental entities, and can use the "systems" of the IRS and state tax authorities to collect delinquent debts. And although the subjective intent of the debt collector is not dispositive of a claim under section 1692e(1) of the FDCPA, the intended effect of the statement reinforces our view as to the actual effect it is likely to have upon the unsophisticated debtor.

GC Services cites *Smith v. Transworld Systems, Inc.*, 953 F.2d 1025 (6th Cir.1992), in support of its position that its statement would not mislead an unsophisticated consumer into thinking that GC Services is vouched for by or affiliated with the government. In *Smith,* the Sixth Circuit rejected the debtor's argument that the statement, "Transworld Systems Inc. is a licensed collection agency," constituted an attempt by the debt collection agency to represent in its collection letter that it was affiliated with the State of Ohio and therefore enjoyed governmental approval. The court reasoned that although "a very narrow reading of the statute may support Smith's position," the statement in question fell outside the scope of section 1692e(1), because the least sophisticated consumer would not have been misled by Transworld's representation.

■ GC Services' reliance on this case is unavailing. Unlike Transworld, GC Services did not simply represent that it was a "licensed" collection company without any mention of the state or federal governments. Instead, it explicitly linked itself with the "federal government" and "various state governments." Moreover, whereas the unsophisticated consumer is likely to understand that being licensed by the State does not mean being vouched for by the State (as in the case of driver's licenses, for example), the unsophisticated consumer would likely not be familiar with the "systems" used for private debt collection and the relationship between those systems and governmental power.

■ GC Services appears to have implied that its development of governmental "systems" for the collection of delinquent taxes would enable it to cause "problems" for the delinquent debtor. An unsophisticated consumer could reasonably believe that his future "problems" would be with "a major branch of the federal government" because of GC Services' development of the government's "systems." GC Services' letter, by which it sought to collect a delinquent account of Jeffrey Gammon may have violated the provisions of section 1692e by falsely implying that it had an affiliation with the United States or various states.

## CONCLUSION

Because Gammon has stated a claim upon which relief can be granted, we VACATE the district court's dismissal for lack of subject matter jurisdiction. The case is reinstated and we REMAND for further proceedings.

EASTERBROOK, Circuit Judge, concurring.

I agree with the majority that the complaint states a claim on which relief may be granted and therefore comes within the jurisdiction of the district court. Section 807 of the Fair Debt Collection Practices Act, 15 U.S.C. § 1692e, forbids the use of any "deceptive" representation in connection with debt collection, and § 1692e(1) adds that the debt collector may not create a false "implication that the debt collector is vouched for" by the United States. Although the words of defendants' letter are true, the statute recognizes that literal truth may convey a misleading impression. Hyper-rational people can draw correct inferences if they understand the speaker's incentives. Paul Milgrom & John Roberts, *Relying on the Information of Interested Parties,* 17 Rand J.Econ. 18 (1986). Ordinary people can't. Plaintiffs

may be able to show that readers have been gulled.

Like my colleagues, I think that the trier of fact must inquire whether a misleading implication arises from an objectively reasonable reading of the communication. Although other courts say that debt collectors must avoid misleading even the "least sophisticated consumer," that formula comes from decisions under the Federal Trade Commission Act and finds no purchase in the text of this statute. Taking "least sophisticated consumer" seriously either condemns *all* debt collection efforts (because some simpleton is bound to read the most fantastic things into ordinary language) or creates a system random in operation (because courts must be applying some other rule, which they have not communicated to debt collectors). The "least sophisticated consumers" actually *believe* that 12 Senators are from other planets.[†] If GC Services were to write: "We have no connection to the U.S. Government," some recipients would believe exactly the opposite. And using the "least sophisticated consumer" as the benchmark would create big problems when determining whether the plaintiff belongs to the class he purports to represent. Imagine the deposition:

Q: Mr. Gammon, I see that you received a C+ in high school English and read detective stories. How then can you be included among the *least* sophisticated recipients of debt collection notices?

A: Counsel, even my best friends will tell you that I am a simpering fool.

Litigation to determine just how gullible the class representative is would not be enlightening.

Although the majority describes the unsophisticated person "whose reasonable perceptions will be used to determine if collection messages are deceptive or misleading" (opinion at 6) as "hypothetical," I understand this reference point to be hypothetical in the same sense as the reasonable person of tort law is hypothetical. Courts seek a benchmark divorced from any one person, but reflecting the behavior of classes of persons acting reasonably. And this reasonable person must differ according to the nature of the addressees. A warning about a drug's side effects, perfectly adequate for the reasonable physician, may be woefully deficient for the reasonable consumer. Thus it is potentially important that the recipients of GC Services' letter were American Express cardholders, a group that is less apt to be misled than, say, an association of high school dropouts. Such persons are likely to read the letter to say that "we are experienced debt collectors, as our list of customers shows" rather than to say that "the IRS endorses us" or that "the IRS will collect this debt." The mere mention of the IRS does not induce these persons to whip out their checkbooks. Being low bidder in a federal contract procurement (which is how GC Services came to furnish

---

[†] See Nick Mann, "12 Senators Are From Outer Space," *Weekly World News* 1, 23–25 (June 7, 1994). The article quotes Senator Gramm: "It's all true. We are space aliens. I'm amazed that it has taken you so long to find out." The article poses an interesting constitutional problem: are non-humans eligible to sit in the Senate? Art. I § 3 cl. 3 provides: "No Person shall be a Senator who shall not have attained to the Age of thirty Years, and been nine Years a Citizen of the United States, who shall not, when elected, be an Inhabitant of that State for which he shall be chosen." Mann's sources were concerned about this. Nathaniel Dean, an "expert" on extraterrestrial lawmakers, is quoted as saying: "The first question that came to my mind was whether the senators are U.S. citizens and eligible to serve in the U.S. Senate ... From what I understand, they were born in the U.S. and are U.S. citizens. It just so happens that their parents were from another world." But are non-humans "persons" for purposes of the Constitution, and therefore eligible to be citizens of the United States? Professor Ackerman would answer yes, to the extent they have demonstrated "dialogic competence." Bruce A. Ackerman, *Social Justice in the Liberal State* (1980). Corporations are "persons," although they are not *homo sapiens*. See *Santa Clara County v. Southern Pacific R.R.*, 118 U.S. 394, 396, 6 S.Ct. 1132, 1140, 30 L.Ed. 118 (1886); cf. *First National Bank of Boston v. Bellotti*, 435 U.S. 765, 778 n. 14, 98 S.Ct. 1407, 1416 n. 14, 55 L.Ed.2d 707 (1978). But see *Miles v. Augusta City Council*, 710 F.2d 1542, 1544 n. 5 (11th Cir.1983) (a talking cat is not a "person"). If sentient non-humans are citizens, should "years" be measured from the perspective of Earth or from the perspective of the Senator's native planet? Cf. Richard A. Posner, *The Problems of Jurisprudence* 265–69 (1990). Perhaps these are political questions. Compare *Powell v. McCormack*, 395 U.S. 486, 89 S.Ct. 1944, 23 L.Ed.2d 491 (1969), with *McIntyre v. Fallahay*, 766 F.2d 1078 (7th Cir.1985). Fortunately, it is not necessary to wrestle these issues to the ground in order to resolve a case under the Fair Debt Collection Practices Act.

the IRS with a collection system) need not imply prowess. Indeed, holders of American Express accounts may appreciate that the IRS is notoriously poor at collecting debts. See Robert D. Hershey, Jr., "When the I.R.S. Is a Soft Touch," *The New York Times* sec. C, p. 1, col. 3 (Apr. 8, 1994). To say, as the letter does, that "X is among our customers," differs from saying that "X endorses our product or service." Monarchies use commercial endorsements as sources of revenue; the United States lacks a comparable tradition. No supplier flys a banner such as: "By appointment, vendor to the Department of the Treasury since 1789."

Because we have rejected the "least sophisticated consumer" approach, the plaintiff will have to show that a significant fraction of the letter's addressees were deceived—for if showing a handful of misled debtors were enough, we would as a practical matter be using the "least sophisticated consumer" doctrine. What proportion is high enough, and how the extent of misunderstanding will be established, is something the district court will have to mull over, but I assume that trademark cases, which present similar questions, will offer aid.