**Lisa TRULL, on behalf of herself and all others similarly situated, Plaintiff,**

**v.**

**GC SERVICES LIMITED PARTNERSHIP, Defendant.**

**No. 96 C 3401.**

United States District Court, N.D. Illinois, Eastern Division.

March 24, 1997.

---

Brian K. Hodes, Christopher V. Langone, Chicago, IL, for Lisa A. Trull.

John Michael Hynes, Mary Blake Nasenbenny, Bruce A. Radke, Clausen, Miller, Gorman, Caffrey & Witous, P.C., for GC Services Ltd. Partnership.

## MEMORANDUM OPINION AND ORDER

NORDBERG, District Judge.

Plaintiff Lisa A. Trull ("Trull") brings a two-count Complaint against Defendant GC Services Limited Partnership ("GC"), alleging violations of the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692 *et seq.*, and the Illinois Collection Agency Act, 225 ILCS 425/1 *et seq.*, arising from Defendant's debt collection practices.[1] Presently before the Court is Defendant's Motion to Dismiss.

## ALLEGED FACTUAL BACKGROUND

The facts alleged in support of Plaintiff's Complaint consist entirely of the contents of four pieces of correspondence from Defendant to Plaintiff. Thus, the Court reproduces the text of the letters:

### LETTER # 1

| | | |
|---|---|---|
| FOR | : | L A TRULL |
| DATE | : | May 23, 1995 |
| SUBJECT | : | BMG MUSIC SERVICE'S CLAIM AGAINST L A TRULL |

Your account has now been referred to GC Services and we intend to obtain payment from you.

In the process of writing this memorandum to you, this firm has accessed the computer information on you provided by BMG MUSIC SERVICE, which is now contained in our National Database. Please be advised that this information will be used by GC Services, including my office, to proceed with our formal collection procedures to settle your account with BMG MUSIC SERVICE.

If you do not think this debt is a just one, you may want to obtain advice on this question. Otherwise, we will expect payment promptly to remedy this claim.

When remitting your payment, detach and return the upper portion of this notice. A return envelope is enclosed for your convenience.

(Ex. A).

### LETTER # 2

| | | |
|---|---|---|
| YOU OWE | : | BMG MUSIC SERVICE |
| ACCOUNT# | : | 3683915395 |
| BALANCE DUE | : | $68.05 |

The debt listed above has been placed with us for collection. (Since you ignored our previous notice, we assume this debt is correct). We intend to take all appropriate steps to see that you pay it.

Your failure to pay has been listed by BMG MUSIC SERVICE with a National Credit Reporting Bureau as an outstanding delinquency. This delinquent credit report will be maintained and available as part of your personal file by the National Credit Reporting Bureau. This may be used by interested consumer product and service companies, or other creditors in case you should attempt to obtain goods or credit from them.

Pay what you owe and further collection activities on your account will stop. Failure to resolve this delinquent account will result in continued collection activity.

(Ex. B, dated June 13, 1995).

### LETTER # 3

### WARNING!

Don't even think about ignoring this notice as you've ignored others in the past requesting

---

1. Plaintiff has agreed to dismissal of Count III, brought under the Illinois Consumer Fraud Act,

225 ILCS 425/9(a)26–27.

you to pay what you owe BMG MUSIC SERVICE.

Buying on credit can be highly convenient. Why run the risk of losing that privilege? You need to take action immediately in order to avoid being labeled as a bad credit risk by BMG MUSIC SERVICE.

Pay your bill and wipe your record clean today!

\* \* \*IMPORTANT NOTICE\* \* \*

YOUR ACCOUNT HAS BEEN TRANSFERRED FROM BMG MUSIC SERVICE TO GC SERVICES' AGENCY MASTER DEBTOR FILE. YOUR PAYMENT MUST BE RECEIVED BY GC SERVICES AT THE ADDRESS INDICATED ABOVE IN ORDER TO ENSURE PROPER CREDIT OR ADJUSTMENT TO YOUR ACCOUNT.

(Ex. C, dated July 5, 1995).

### LETTER # 4

This is the last effort I will be making to settle your account with BMG MUSIC SERVICE.

Your lack of response to date indicates to us that you do not intend to pay for the merchandise you received from BMG MUSIC SERVICE. Your name will be retained as part of our records along with others who, despite their good name and reputation, have shirked their payment responsibility.

Is it not about time you settled this matter, especially in view of the consequences? We are anxious to clear your record as well as ours. Send you payment!

\* \* \*IMPORTANT NOTICE\* \* \*

YOUR ACCOUNT HAS BEEN TRANSFERRED FROM BMG MUSIC SERVICE TO GC SERVICES' AGENCY MASTER DEBTOR FILE. YOUR PAYMENT MUST BE RECEIVED BY GC SERVICES AT THE ADDRESS INDICATED ABOVE IN ORDER TO ENSURE PROPER CREDIT OR ADJUSTMENT TO YOUR ACCOUNT.

(Ex. D, dated August 15, 1995).

Further, each letter concludes with the following sentence: "NOTICE: see reverse side for important consumer information." The reverse side then provides the following in all capital letters:

This is an attempt to collect a debt and any information obtained will be used for *that* purpose. Consumer information:

Unless you, within thirty (30) days after your receipt of GC Services' initial written notice to you concerning this debt, dispute the validity of the debt, or any portion thereof, the debt will be assumed to be valid by GC Services. If you notify GC Services in writing within the above described thirty (30) day period that the debt, or any portion thereof, is disputed, GC Services will obtain verification of the debt or a copy of a judgment against you and a copy of such verification or judgment will be mailed to you by GC Services upon your written request within the above described thirty (30) day period, GC Services will provide you with the name and address of the original creditor, if different from the current creditor.

The demands for payment in this letter do not reduce your rights to dispute this debt, or any portion thereof, and/or to request verification within the thirty (30) day period as set forth above.

### ANALYSIS

The purpose of a Rule 12(b)(6) motion is to test the legal sufficiency of the complaint. *Adams v. Cavanagh Communities Corp.*, 847 F.Supp. 1390, 1396 (N.D.Ill.1994). In order to survive a motion to dismiss, a complaint must allege sufficient facts to outline a cause of action. *Davis v. Frapolly*, 747 F.Supp. 451 (N.D.Ill.1989). The complaint "must state either direct or inferential allegations concerning all of the material elements necessary for recovery under the relevant legal theory." *Carl Sandburg Village Condominium Ass'n No. 1 v. First Condominium Dev. Co.*, 758 F.2d 203, 207 (7th Cir.1985).

The Court must accept as true all well-pleaded factual allegations in the complaint and view them, along with the reasonable inferences to be drawn, in the light most favorable to the plaintiff. *Cornfield v. Consolidated High Sch. Dist. No. 230*, 991 F.2d 1316, 1324 (7th Cir.1993). However, the

Court need not accept conclusory legal allegations as true. *Baxter v. Vigo County Sch. Corp.*, 26 F.3d 728, 730 (7th Cir.1994). A strict standard applies when a court evaluates the legal sufficiency of a plaintiff's factual allegations. A court may grant a motion to dismiss only if "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 102, 2 L.Ed.2d 80 (1957); *Cushing v. City of Chicago*, 3 F.3d 1156, 1159 (7th Cir.1993).

## I. COUNT II: FAIR DEBT COLLECTION PRACTICES ACT

### A. Section 1692e(16)

Plaintiff complains that the correspondence from Defendant violates 15 U.S.C. 1692e(16), which provides:

> A debt collector may not use any false, deceptive, or misleading representation or means in connection with the collection of any debt. Without limiting the general application of the foregoing, the following conduct is a violation of this section:
>
> > (16) The false representation or implication that a debt collector operates or is employed by a consumer reporting agency as defined by section 1681a(f) of this title.

Section 1681a(f) defines consumer reporting agency as "any person which ... regularly engages ... in the practice of assembling or evaluating consumer credit information or other information on consumers for the purpose of preparing or furnishing consumer reports to third parties...." Defendant moves to dismiss for failure to state a claim, arguing that the correspondence at issue neither represents nor implies that Defendant operates a consumer reporting agency. However, since Plaintiff only claims that GC implied it operates a consumer reporting agency, the first argument is inapposite.

The Seventh Circuit has identified the "unsophisticated consumer" as "the hypothetical consumer whose reasonable perceptions will be used to determine if collection messages are deceptive or misleading," in *Gammon v. GC Services Ltd. Partnership*, 27 F.3d 1254, 1257 (7th Cir.1994). This standard is designed to protect consumers who are of below-average sophistication or intelligence, uninformed, naive, or trusting, while incorporating an objective element of reasonableness that "shields complying debt collectors from liability for unrealistic or peculiar interpretations of collection letters." *Id.*

Applying the standard to this case, the Court concludes that an unsophisticated consumer, who has been informed that "This is the last effort I will be making to settle your account with BMG Music Service," reasonably could interpret the statement, "Your name will be retained as part of our records along with others who, despite their good name and reputation, have shirked their payment responsibility," followed by a reference to (1) the need to "settle[ ] this matter, especially in view of the consequences," (2) the statement that "[w]e are anxious to clear your record as well as ours," and (3) the "* * *IMPORTANT NOTICE* * *" that "YOUR ACCOUNT HAS BEEN TRANSFERRED TO GC SERVICES' AGENCY MASTER DEBTOR FILE," to imply that GC operates a consumer reporting agency that assembles consumer credit information for the purpose of furnishing consumer reports to third parties.

Like GC's language at issue in *Gammon*, "the language in the collection letter appears to be cleverly drafted in order to insinuate what obviously cannot be stated directly." *Id.* at 1258. Moreover, the *Gammon* court explained that "GC Services appear[ed] to have implied that its development of governmental 'systems' for the collection of delinquent taxes would enable it to cause 'problems' for the delinquent debtor," falsely implying that it had an affiliation with the United States or various states, in violation of Section 1692e. Likewise, in the present case, GC Services has implied that, despite the letter being its last effort to settle the debt, Plaintiff's inclusion in GC Services' "master debtor file" will have "consequences." The reasonable unsophisticated consumer could construe the furnishing of this master debtor file to third parties to be among those vague consequences and, therefore,

the purpose behind the "master debtor file." Thus, Trull has sufficiently stated a claim upon which relief may be granted.

### B. Section 1692e(10)

■ Plaintiff further claims in Count II that Exhibit C simulates a telegram, thus deceptively overstating and misrepresenting the urgency of the communication, in violation of the Act. Plaintiff's responsive brief invokes Section 1692e(10), which includes "The use of any false representation or deceptive means to collect or attempt to collect any debt" as a violation of the Act. Thus, Plaintiff apparently claims that Defendant falsely represented the correspondence to be a telegram as a means of collecting a debt. Defendant moves to dismiss, arguing that the Act does not prohibit debt collectors from simulating telegrams and, regardless, the correspondence at issue does not simulate a telegram.

Plaintiff's Complaint merely alleges that the letter simulates a telegram, without specifying in what manner. Nevertheless, as the letter is attached to the Complaint, the Court may consider the letter in determining whether Plaintiff states a claim upon which relief may be granted. Plaintiff argues in her responsive brief that the letter of June 13, 1995 simulates a telegram because it is on yellow paper and headed "STAR High Priority Communication" and because of the layout and type face.

The Staff Commentary on the Fair Debt Collection Practices Act advises that "A debt collector may not communicate by a format or envelope that misrepresents the nature, purpose, or urgency of the message. It is a violation to send any communication that conveys to the consumer a false sense of urgency." 53 Fed.Reg. 50,106 (1988). The only case cited by Plaintiff that held a simulated telegram violates Section 1692e(10) is distinguishable, as the letter was headed "Tell-A-Gram." (Resp. at 9). Nevertheless, assuming, without purporting to decide, that simulating a telegram violates the Act, the Court finds that Plaintiff cannot state such a claim, as even an unsophisticated consumer could not reasonably construe the letter at issue to be a telegram. First, unlike a tele-

gram, the letter was sent through the mail. One who lacks the information to appreciate this distinction would be similarly unaware of the expense that attaches to a telegram and, thus, would not interpret the letter with the same urgency as one who believed it was hand delivered. Further, no derivation of the word telegram appears on the letter; rather, a sentence appears below the heading, stating in all capital letters that "This star high priority letter is being sent to you by GC Services," clearly identifying it as a letter. This is a situation where the standard's objective element of reasonableness "shields complying debt collectors from liability for unrealistic or peculiar interpretations of collection letters." *Gammon*, 27 F.3d at 1257. Accordingly, that claim is dismissed, with prejudice.

### C. Section 1692g

■ Plaintiff claims that the correspondence violated Section 1692g in two ways: (1) each letter contained a validation notice, diluting the meaning of the warning and confusing the consumer, and (2) the second letter was sent within 30 days of the initial communication, overshadowing and effectively invalidating the validation notice. Section 1692g, entitled "Validation of Debts," provides in pertinent part:

(a) Within five days after the initial communication with a consumer in connection with the collection of any debt, a debt collector shall, unless the following information is contained in the initial communication or the consumer has paid the debt, send the consumer a written notice containing

(3) a statement that unless the consumer, within thirty days after receipt of the notice, disputes the validity of the debt, or any portion thereof, the debt will be assumed to be valid by the debt collector;

(4) a statement that if the consumer notifies the debt collector in writing within the thirty-day period that the debt . . . is disputed, the debt collector will obtain verification of the debt or a copy of a judgment against the consumer and a copy of such verification or judgment

will be mailed to the consumer by the debt collector; and

(5) a statement that, upon the consumer's written request within the thirty-day period, the debt collector will provide the consumer with the name and address of the original creditor, if different from the current creditor.

15 U.S.C. 1692g(a).

Drawing all reasonable inferences in favor of Plaintiff, the Court finds that it appears beyond doubt that she can prove no set of facts in support of the claim arising from repeated validation notices that would entitle her to relief. The validation notice defines the validation period as being "within thirty (30) days after your receipt of GC Services' *initial* written notice to you concerning this debt." (Ex.'s A–D)(emphasis added). It is unreasonable for even the consumer of below-average sophistication or intelligence, who is uninformed, naive, or trusting, to ignore the word "initial," and, as explained above, the standard protects the compliant debt collector from a peculiar interpretation.

■ In contrast, Plaintiff states a claim arising from the letter of June 13, 1996, because it states "Since you ignored our previous notice, we assume this debt is correct," contradicting notice of the thirty-day period before which the debt will be assumed to be valid. The Court finds that an unsophisticated consumer reasonably could be misled reading that statement within the validation period. The Court rejects Defendant's argument that the following statement on the reverse of the letter, below the validation notice, precludes such a claim: "The demands for payment in this letter do not reduce your rights to dispute this debt, or any portion thereof, and/or request verification within the thirty-day period (30) as set forth above." The argument begs the question, as the issue is whether the admonition that "we assume this debt is correct" overshadows and contradicts the notice on the reverse. As the Seventh Circuit recently explained, "A debt validation notice, to be valid, must be effective, and it cannot be cleverly couched in such a way as to eviscerate its message. To protect the uninformed, the naive, and the trusting—the sort of peo-

ple who easily fit under the umbrella of the 'unsophisticated consumer'—the notice cannot be as misleading and tricky as the one used [by the defendants]." *Avila v. Rubin,* 84 F.3d 222, 226 (7th Cir.1996).

■ However, the claim fails to the extent it is based upon mere collection activity being made during the validation period, as Section 1692g does not require the debt collector to suspend collection activities. Rather, the debt collector need only cease collection if the consumer disputes the debt or requests the name and address of the original creditor within the validation period, and then only until it mails a copy of the verification to the consumer. § 1692g(b). *See Robinson v. Transworld Systems, Inc.,* 876 F.Supp. 385, 391 (N.D.N.Y.1995); *Rabideau v. Management Adjustment Bureau,* 805 F.Supp. 1086 (W.D.N.Y.1992); *Anthes v. Transworld Systems, Inc.,* 765 F.Supp. 162, 170 (D.Del.1991). Thus, the motion to dismiss the claim based upon the letter of June 13, 1995 is granted in part and denied in part.

## II. COUNT I: ILLINOIS COLLECTION AGENCY ACT

Plaintiff claims that the correspondence violates the Illinois Collection Agency Act, 225 ILCS 425/9(a)(15)(B), by falsely giving the impression that, as a debt collector, it operates a consumer reporting agency. Section 9 provides in pertinent part:

(a) The Department may refuse to issue or renew, or may revoke, suspend, place on probation, reprimand or take other disciplinary action as the Department may deem proper, including fines not to exceed $1,000 per licensee per complaint, for any one or any combination of the following causes:

(15) Communicating with the debtor or any member of the debtor's family at such a time of day or night and with such frequency as to constitute harassment of the debtor or any member of the debtor's family. For purposes of this Section the following conduct shall constitute harassment:

(B) The threat of publication or publication of a list of consumers who allegedly

refuse to pay debts, except to a consumer reporting agency.

Moreover, the last sentence of Section 9 provides: "No debt collector while collecting or attempting to collect a debt shall engage in any of the Acts specified in this Section, each of which shall be an unlawful practice." Defendant moves the Court to dismiss Count I on several grounds.

## A. Private Right of Action

Defendant argues that the Collection Agency Act does not provide for a private right of action. However, the only court to have addressed the issue found an implied private right of action. *Sherman v. Field Clinic,* 74 Ill.App.3d 21, 29 Ill.Dec. 597, 603–04, 392 N.E.2d 154, 160–61 (1st Dist.1979). In the exercise of supplemental jurisdiction over an Illinois claim, federal courts "apply the law that would be applied in this context by the Illinois Supreme Court. We are obliged to consider the holdings of state appellate courts, but not bound to do so if we have good reasons for diverging from those decisions." *Baer v. First Options of Chicago, Inc.,* 72 F.3d 1294. 1301 (1995)(internal citations omitted); *see also* 19 Charles Alan Wright, Arthur R. Miller & Edward H. Cooper, *Federal Practice & Procedure* § 4507 (2d ed.1996). Defendant submits the following argument for diverging from *Sherman,* reproduced in its entirety: "the *Sherman* court failed to address the comprehensive statutory scheme giving the Illinois Department of Professional Regulation regulatory authority for violations of the Act and, therefore, the *Sherman* decision was incorrectly decided." (Mem. at 3).

The Court rejects this argument for several reasons. Defendant cryptically assumes that consideration of the statute's grant of regulatory authority over violations warrants divergence from *Sherman,* without articulating a basis for that assumption. Regardless, the following excerpt from *Sherman* belies Defendant's argument that the *Sherman* court failed to address the Act's grant of regulatory authority over violations:

the need for a civil action for damages under the statute is clear. The act contains no provision for compensating debt-ors for their injuries and therefore provides little incentive for them to seek enforcement of the Act. Although an aggrieved debtor may derive some psychological satisfaction from the suspension or revocation of a collection agency's certificate, or from the criminal prosecution of an offending agency, it seems unlikely that most debtors will initiate and pursue their complaints through all the steps in the administrative or criminal justice processes in the absence of any tangible reward. Finally, nothing in the Act indicates an intent to limit the remedies available to those, administrative or criminal, enumerated in the Act. Other statutes providing for such remedies have nevertheless been held to embrace implied civil rights of action, and the Act itself manifests an intent contrary to exclusivity.

29 Ill.Dec. at 604, 392 N.E.2d at 161 (internal citations omitted). Thus, contrary to Defendant's argument, the *Sherman* court addressed the regulatory authority over violations of the Act and found that it counseled in favor of a private right of action.

Furthermore, the Illinois Supreme Court's adoption of the *Sherman* standard as a basis for finding an implied private right of action for damages under the Illinois Real Estate Brokers and Salesmen License Act, curiously absent from the parties' briefs, demonstrates that the Illinois Supreme Court would find an implied private right of action under the Illinois Collection Agency Act. *Sawyer v. Jarvis Corp.,* 89 Ill.2d 379, 385–91, 59 Ill.Dec. 905, 907–11, 432 N.E.2d 849, 851–55 (1982). Indeed, the Supreme Court rejected the reasoning (presumably) behind Defendant's argument when it recognized the remedies provided under the act in question but stated that "departmental enforcement does not necessarily mean that they must not have intended a private right of action." *Id.* at 391, 59 Ill.Dec. at 910, 432 N.E.2d at 854.

Defendant also notes that "[t]he Act has been amended, most recently on January 1, 1996, and the Illinois state legislature has declined to authorize a private right of action for damages." However, in reply, Defendant concedes that the issue was not considered

by the legislature when it amended the Act, but explains that the legislature is presumed to have knowledge of and consider all judicial decisions when amending legislation, citing *In re Haas*, 48 F.3d 1153, 1157 (11th Cir. 1995). Yet, under that logic a legislature who intended to preclude a private right of action, with knowledge of an Illinois Appellate Court decision implying a private right of action, would amend the Act to deny a private right of action. Thus, Defendant's argument proves too much. *See Central Bank v. First Interstate Bank*, 511 U.S. 164, 185, 114 S.Ct. 1439, 1452, 128 L.Ed.2d 119 (1994)("When Congress reenacts statutory language that has been given a consistent judicial construction, we often adhere to that construction in interpreting the reenacted statutory language."); *Pierce v. Underwood*, 487 U.S. 552, 567, 108 S.Ct. 2541, 2551, 101 L.Ed.2d 490 (1988)(same); *Lorillard v. Pons*, 434 U.S. 575, 581, 98 S.Ct. 866, 870, 55 L.Ed.2d 40 (1978)(same). Although the Court does not consider a single opinion a sufficient condition for applying the reenactment doctrine, the doctrine nonetheless compels the Court to reject the opposite doctrine proffered by Defendant, even without considering the Illinois opinion.

## B. Failure to State a Claim

 Nevertheless, the Court grants Defendant's Motion to Dismiss Count I, as 225 ILCS 425/9(a)(15)(B) does not provide a cause of action arising from the false impression that a debt collector operates a consumer reporting agency. Rather, Section 9(a)(15)(B) defines the following conduct as unlawful harassment: "The threat of publication or publication of a list of consumers who allegedly refuse to pay debts, except to a consumer reporting agency." Plaintiff has completely ignored Defendant's argument, instead incorporating the argument that she states a claim for relief under Section 1692e of the Fair Debt Collection Practices Act, entitled "False or misleading representations," which prohibits "[t]he false representation or implication that a debt collector operates ... a consumer reporting agency." 15 U.S.C. § 1962e(16). However, implying that one operates a consumer reporting agency is not synonymous with threatening

publication of a list of consumers who refuse to pay debts to someone other than a consumer reporting agency. Indeed, the Fair Debt Collection Act explicitly prohibits the latter in Section 1692d, entitled "Harassment or abuse," despite Section 1692e(16)'s explicit prohibition of the former, demonstrating the distinction. *See* § 1692d(3). Moreover, as several courts have explained, a consumer's sophistication level, the standard Plaintiff relies upon, is inapposite to the determination of whether unlawful harassment has occurred, further illustrating the distinction. *See Jeter v. Credit Bureau, Inc.*, 760 F.2d 1168 (11th Cir.1985)(but analogous standard required) & *Beattie v. D.M. Collections, Inc.*, 754 F.Supp. 383 (D.Del.1991). Thus, as Plaintiff has not stated a claim under the Illinois Collection Agency Act, the Court dismisses the claim, without prejudice.

## C. Damages

 Defendant also moves to dismiss Count I for failure to allege actual damages. In support, Defendant points to the *Sherman* Plaintiff's allegations of emotional and mental distress and the *Sherman* court's holding that "a private right of *action for damages* may be founded on a violation of Section 9 of the Collection Agency Act...." 29 Ill.Dec. at 604, 392 N.E.2d at 161 (emphasis added). Moreover, in finding a private right of action, the court relied upon the findings that "the injury allegedly suffered by plaintiffs is within the range of injuries the statute was designed to prevent" and "the act contains no provision for *compensating debtors for their injuries.*" *Id.* (emphasis added). Thus, argues Defendant, there is no need to imply a private right of action absent actual damages, because in that case the Illinois Department of Regulation's enforcement of the Act is adequate. The Court agrees and finds that, due to the regulatory scheme and reasoning underpinning the private right of action, actual injury is an element of a cause of action under the Illinois Collection Agency Act. Notably, Plaintiff has not provided the Court with any authority in support of a contrary conclusion, which would be the exception, rather than the rule. *Cf. Carey v. Piphus*, 435 U.S. 247, 98 S.Ct. 1042, 55

L.Ed.2d 252 (1978). Accordingly, the Court also dismisses Count I, without prejudice, for failure to allege any actual injury.

## CONCLUSION

For the reasons given, Defendant's Motion to Dismiss in GRANTED in part and DENIED in part. Specifically, Count I is dismissed without prejudice, the claims brought in Paragraphs 25 and 26 of Count II are dismissed, with prejudice, and the claim brought in Paragraph 27 of Count II is dismissed with prejudice to the extent it arises from the mere act of sending Exhibit B. Additionally, Count III is dismissed pursuant to agreement of the parties. Plaintiff shall file a motion for class certification and a memorandum in support within 28 days of this Order and, if appropriate, an amended complaint. Defendant shall respond within 21 days, and Plaintiff shall reply within 14 days. The Court shall rule by mail.