D. Hull YOUNGBLOOD, Jr, and
Gwendolyn Youngblood

v.

GC SERVICES LIMITED
PARTNERSHIP

No. CIV.A–01–CA–646–JN.

United States District Court,
W.D. Texas,
Austin Division.

Feb. 6, 2002.

Barbara M. Barron, Barron & Newburger, P.C., Manuel H. Newburger, Barron & Newburger, P.C., Austin, for D. Hull Youngblood, Jr., Gwendolyn Youngblood, plaintiffs.

C. Ed Harrell, Jr., Hughes, Watters & Askanase, L.L.P., Houston, for GC Services Limited Partnership, defendants.

## ORDER

NOWLIN, Chief Judge.

Before the Court is Plaintiffs' Motion for Partial Summary Judgment and Brief in Support Thereof (Doc. No. 4); GC Services' Response to Motion for Partial Summary Judgment (Doc. No. 10); and Plaintiffs' Reply to Defendant's Response to Plaintiffs' Motion for Partial Summary Judgment (Doc. No. 14). Based on these documents, the applicable legal authority and the entire case file, the Court enters the following Order.

### Introduction And Factual Background

Plaintiffs' D. Hull Youngblood and Gwendolyn Youngblood did not pay the full amount of a bill charged to them by AT & T. Plaintiffs' claim that the charges were unauthorized and/or in error, but that issue is not currently before the Court. AT & T referred the debt to Defendant GC Services for collection. Defendant sent two letters to Plaintiffs, seeking to collect on the debt. Plaintiffs claim that the letters sent by Defendant violate certain provisions of the Fair Debt Collection Practices Act (FDCPA), codified at 15 U.S.C. § 1692, et seq.

The Court discerns three types of alleged violations of the FDCPA. First, Plaintiffs claim that the letters failed to satisfy the requirements of 15 U.S.C. § 1692g, often and hereinafter referred to as the validation notice, which requires that certain information be disclosed to the consumer either in the first communication or within five days thereafter. Second, Plaintiffs claim that they were not properly warned that Defendant was trying to collect a debt and that any information obtained would be used for that purpose as required by 15 U.S.C. § 1692e(11). Finally, Plaintiffs claim that Defendants' use of the professional names J. Moran and J. Mason, instead of the employees' given names, violated 15 U.S.C. 1692e(9) and (10).

In a separate motion, Plaintiffs seek class certification of this lawsuit pursuant to Rule 23 of the Federal Rules of Civil Procedure. Plaintiffs' Motion for Partial Summary Judgment states that Plaintiffs' request that the Court first certify the class and then grant partial summary judgment. It is not clear to the Court whether Plaintiffs intend to withdraw the motion in the event that class certification is denied, or if they would still seek partial summary judgment. Defendant objected to the indeterminate nature of the request, but Plaintiffs declined to respond to that objection, instead directing the Court to the "essence" of their arguments. The Court will not view the motion for partial summary judgment as contingent upon certification of the class, and will withhold judgment on the motion for class certification until a later date.

### ANALYSIS

A party moving for summary judgment has the burden of showing that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56. A genuine issue of material fact exists "if the evidence is such that a reasonable jury could return a verdict for the non-moving party."

*Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). The court must view all evidence in the light most favorable to the party opposing the motion and draw all reasonable inferences in that party's favor. *Id.,* 477 U.S. at 255, 106 S.Ct. at 2513. As the party moving for summary judgment, Defendant bears the initial burden of showing the basis for the motion, and of identifying the pleadings and evidence which they believe demonstrates the absence of a genuine issue of material fact. *Washington v. Armstrong World Indus., Inc.,* 839 F.2d 1121 (5th Cir.1988). Once a summary judgment motion is made and properly supported, the non-movant must go beyond the pleadings and designate specific facts in the record showing that there is a genuine issue for trial. Fed. R.Civ.P. 56(e); *Little v. Liquid Air Corp.,* 37 F.3d 1069, 1075 (5th Cir.1994) (en banc). Although the non-movant may satisfy this burden by tendering depositions, affidavits and other competent evidence, "[m]ere conclusory allegations are not competent summary judgment evidence, and they are therefore insufficient to defeat or support a motion for summary judgment." *Topalian v. Ehrman,* 954 F.2d 1125, 1131 (5th Cir.1992). Pleadings are not summary judgment evidence. *Wallace v. Texas Tech Univ.,* 80 F.3d 1042, 1047 (5th Cir. 1996).

The Fifth Circuit has not ruled on which standard is to be applied to FDCPA cases. Plaintiffs make much of the "least sophisticated consumer" standard, citing opinions from several other circuits that have adopted that standard. Defendant counters that the standard should be that of a "reasonable consumer with intelligence and experience typical of or average for those consumers to whom the communication was directed." See GC Services Response to Motion for Partial Summary Judgment, pp. 3–4, fn. 2, quoting *Taylor v. Perrin, Landry, deLaunay & Durand,* 103 F.3d 1232, 1240 (5th Cir.1997) (Garwood, J. concurring). The third alternative, adopted by the Seventh Circuit, is the "unsophisticated consumer" standard. Most courts comparing the standards seem to think there is little difference between the least sophisticated consumer and the unsophisticated consumer standards. The latter protects consumers of "below average sophistication or intelligence," while the former protects those in addition to the "very last rung on the sophistication ladder." *Taylor,* 103 F.3d at 1236, citing *Gammon v. GC Services Limited Partnership,* 27 F.3d 1254, 1257 (7th Cir.1994). The *Taylor* court refrained from choosing between the least sophisticated consumer standard and the unsophisticated consumer standard because both rendered the same result for that case. *Taylor,* 103 F.3d at 1236.

As in *Taylor,* the Court does not have to choose one of the three standards, as all render the same result. However, since the question has been raised, the Court is compelled to comment. The least sophisticated consumer standard cannot really mean to protect the *least* sophisticated consumer. Indeed, even the Second Circuit, which purports to apply the least sophisticated consumer standard, stated, "It should be emphasized that in crafting a norm that protects the naive and the credulous the courts have carefully preserved the concept of reasonableness." *Clomon v. Jackson,* 988 F.2d 1314, 1319 (2nd Cir. 1993). But the unreasonability of the least sophisticated consumer should never be underestimated.

The *Clomon* court, although purporting to adopt and apply the least sophisticated consumer standard, certainly did not do so in a literal sense, as the language of the opinion makes abundantly clear. The court noted certain things that satisfy its version of the least sophisticated consumer stan-

dard, according to the rulings of other courts applying it. Essential information that is conveyed implicitly rather than explicitly is not deceptive under this standard. *Clomon*, 988 F.2d at 1319, *citing Smith v. Transworld Systems*, 953 F.2d 1025, 1028–29 (6th Cir.1992). Another court hold that "even the least sophisticated consumer could be presumed to possess a rudimentary amount of information about the world and a willingness to read a collection notice with some care." *Clomon*, 988 F.2d at 1319, citing *Johnson v. NCB Collection Services*, 799 F.Supp. 1298, 1306–07 (D.Conn.1992). Yet another court ruled that a collection notice met the standard even though the notices were printed only on the back of the letter, with a note on the front directing the consumer to read them. 988 F.2d at 1319. *Gaetano v. Payco of Wisconsin, Inc.*, 774 F.Supp. 1404, 1411 (D.Conn.1990).

These rulings may have been correct under the standard applied, but that test could not properly purport to protect the *least* sophisticated consumer, for the *least* sophisticated consumer is a dull bulb indeed. If the law truly seeks to protect the *least* sophisticated consumer, courts would have to evaluate the good faith of any plaintiff or witness claiming to have been misled, no matter how unreasonable, no matter how dull, no matter how stupid the failure to understand. If the court found the claim to be made in good faith, then the collection letter would fail to satisfy the least sophisticated consumer standard. Even if never before that time had anyone been so ignorant as to be misled by the letter in question, we would have a new leader in the never-ending race to the bottom, a new least sophisticated consumer, and a new and unforeseeable burden on the legitimate and important, if unpopular, business of debt collection.

Perhaps this argument against the least sophisticated consumer standard is merely semantic, but in law semantics are rarely properly characterized as mere. If words mean things, and if we should mean the words that we use, we must not adopt a standard called the least sophisticated consumer standard. At the very least, it should be renamed, if not discarded altogether. The unsophisticated consumer standard is more practical, if only because its name more accurately describes those whom it protects. It protects those who are not exceptionally bright or blessed with intellect, those who are particularly gullible and credulous, and those who are quite naive and trusting. The Court finds Judge Kanne's formulation in *Gammon* compelling.

> In maintaining the principles behind the enactment of the FDCPA, we believe a simpler and less confusing formulation of a standard designed to protect those consumers of below-average sophistication or intelligence should be adopted. Thus, we will use the term 'unsophisticated,' instead of the phrase 'least sophisticated,' to describe the hypothetical consumer whose reasonable perceptions will be used to determine if collection messages are deceptive or misleading. We reiterate that an unsophisticated consumer standard protects the consumer who is uninformed, naive, or trusting, yet it admits an objective element of reasonableness. The reasonableness element in turn shields complying debt collectors from liability for unrealistic or peculiar interpretations of collection letters.

*Gammon*, 27 F.3d at 1257. Any consumer falling below that level is, in this context, simply beyond the law's ability to protect.

### a. *Validation Notice*

The validation notice requires debt collectors to include the following notices, either in the initial written communication, or within five days thereafter:

(1) the amount of the debt;

(2) the name of the creditor to whom the debt is owed;

(3) a statement that unless the consumer, within thirty days after receipt of the notice, disputes the validity of the debt, or any portion thereof, the debt will be assumed to be valid by the debt collector;

(4) a statement that if the consumer notifies the debt collector in writing within the thirty-day period that the debt, or any portion thereof, is disputed, the debt collector will obtain verification of the debt or a copy of a judgment against the consumer and a copy of such verification or judgment will be mailed to the consumer by the debt collector; and

(5) a statement that, upon the consumer's written request within the thirty-day period, the debt collector will provide the consumer with the name and address of the original creditor, if different from the current creditor.

15 U.S.C. § 1692g(a).

Plaintiffs' complaint about the validation notice in Defendant's debt collection letter boils down to three issues. First, the notice was printed on the back. Second, the notice was printed in gray letters on a gray background. There is no assertion that the required notices were absent from the letter, only that they were not sufficiently prominent. See Plaintiffs' Motion for Partial Summary Judgment and Brief in Support Thereof, p. 8, para. 4.9. Third, a second letter was sent, which Plaintiffs claim causes confusion as to the actual deadline by which the debtor must request validation of the debt.

█ Plaintiffs have submitted two exhibits containing copies of both letters received from Defendant. The parties dispute whether the copies are more or less legible than the original. Plaintiffs say that the copy is more legible, while Defen-dant says the original is more legible. The original is not in the Court's possession. It seems highly unlikely to the Court that a copier actually produces something clearer and more legible than the original. In any event, the copies submitted as Exhibits A and B to the motion for partial summary judgment are very legible. The type is not exceptionally dark, but there is no requirement in the law that it be darker than, or even as dark as, normal printing. It must simply be large enough and dark enough to be easily read and prominent enough to be noticed. It is.

Plaintiffs cite several cases that gray type on a gray back ground is a violation of the FDCPA. The decisions in the cited cases may be correct on those facts, but there are innumerable shades of gray. It is entirely conceivable that a dark gray print on a light gray background is easy to read and thus not a violation of the FDCPA. The evidence before the Court is certainly not so illegible as to be illegible as a matter of law.

Plaintiffs also complain about the validation notice being on the back of the letter. They conveniently omit any mention of the prominently displayed instruction on the front of the letter. It reads: NOTICE: SEE REVERSE SIDE FOR IMPORTANT CONSUMER INFORMA-TION. This instruction to see the back side of the letter is not merely prominent, it is in very bold green letters, setting it off from the rest of the letter and almost unavoidably attracting the eye.

█ An additional source of Plaintiffs irritation is that Defendant sent them a second letter, dated nearly four weeks later than the first. Plaintiffs claim that sending a second letter is a validation notice violation because it creates confusion as to the end of the thirty day period that a debtor has to request verification of the debt. The letters bear similar, but not

identical account numbers, and the amounts owed are different. The Court will assume for purposes of this motion that the two letters seek to collect the same debt. In that case, the validation notice states that the debtor has thirty days from the date of receipt of the initial written notice. This is not too confusing as a matter of law, and thus cannot be resolved on this summary judgment motion.

### b. § 1692e(11)

■ Plaintiffs also complain that Defendant failed to comply with 15 U.S.C. § 1692e(11), which requires that debt collectors notify debtors that they are attempting to collect a debt and that all information they obtain will be used for that purpose. Their arguments are identical to those made regarding the validation notice, except that the second letter is not alleged to cause confusion. Since the arguments are the same, the outcome is the same. The warning is on the back of the letter, with the same direction in bold green type, pointing the debtor to the location of the warning and making clear that the debtor should consider it "important." The Court is hard pressed to find that this is a violation at all, and it certainly is not so clearly violative that it can be deemed so on summary judgment.

### c. *Professional Names*

■ Citing 15 U.S.C. § 1692e(9) and (10), Plaintiffs complain that Defendant's use of the professional names J. Moran and J. Mason are misleading because they are not the given names of the persons using them. According to the Defendant's response to the motion for partial summary judgment, each of these names is assigned to a particular employee of GC Services, and have been registered, licensed and in use by Defendant since at least 1978. See Declaration of Michael T. Sullivan, attached to GC Services' Response to Motion for Partial Summary Judgment.

Names are arbitrary labels used to identify one person from another. They can be changed for any number of reasons. The use of a professional name or desk name is not uncommon. Neither is it misleading so long as it refers to a particular person. The Court understands why one in the debt collection business would be hesitant to sign letters with his real name, for fear that a disgruntled debtor would decide to seek out and punish the debt collector.

Furthermore, the intent of § 1692e is not to require that debt collectors use the real names of employees, but to ensure that debtors are made aware that they are being contacted by a particular debt collection agency, which must be identified clearly in the letter, and not someone or something with higher authority or more draconian debt collection tactics. The given name of the employee from whose desk the letter was sent is immaterial, and the use of a professional name or desk name, when used properly, is no violation of § 1692e. Indeed, the true source of the letter is not any particular individual, but the company, corporation, partnership, etc., that is collecting the debt. The letter is unambiguous as to its source when the source is so defined.

IT IS THEREFORE ORDERED, ADJUDGED AND DECREED that Plaintiffs' Motion for Partial Summary Judgment and Brief in Support Thereof (Doc. No. 4) is DENIED.