United States Court of Appeals,

Fifth Circuit.

No. 96-30826.

Bobby B. McKENZIE, Plaintiff-Appellant,

v.

E.A. UFFMAN AND ASSOCIATES, INC., doing business as Credit Bureau of BR, Defendant-Appellee.

Aug. 14, 1997.

Appeal from the United States District Court for the Middle District of Louisiana.

Before WISDOM, DUHÉ and BARKSDALE, Circuit Judges.

WISDOM, Circuit Judge:

In this case we review the district court's determination that a certain collection notice did not violate § 1692 of the Fair Debt Collection Practices Act. Because we disagree with the district court's conclusion, we reverse the district court's grant of the defendant's motion for summary judgment and remand the case for further proceedings.

*BACKGROUND:*

Bobby McKenzie, a Louisiana resident, filed a complaint against E.A. Uffman & Associates, Inc. ("E.A.Uffman"), under the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692. McKenzie alleged that in October 1994, E.A. Uffman mailed him a debt-collection notice (the "McKenzie notice"), which bore the name "Collections Department, Credit Bureau of Baton Rouge" and

1

requested payment of a $244 medical debt allegedly owed to "Anesthesiology Group". McKenzie asserted that, because E.A. Uffman neither "operated" nor "was employed by" a credit-reporting agency, the use of the name "Credit Bureau" was a misrepresentation in violation of § 1692e(16). McKenzie sought damages and attorney's fees.

E.A. Uffman moved for summary judgment and submitted in support documentary evidence and a deposition of Glenn Uffman, E.A. Uffman's President. E.A. Uffman argued that it had been "affiliated" with the Credit Bureau of Baton Rouge ("Credit Bureau") for decades and that its use of the name "Credit Bureau" on debt-collection notices was not deceptive or misleading. E.A. Uffman asserted that since 1948 it had an uninterrupted "relationship" with the Credit Bureau by which E.A. Uffman acted as the Credit Bureau's collection department.

The district court granted E.A. Uffman's summary-judgment motion and dismissed the case. The court found that E.A. Uffman's use of the name "Collections Department, Credit Bureau of Baton Rouge" on the McKenzie notice was "not deceptive or misleading because there is an affiliation between the two entities". Adopting a standard from other courts, the district court ruled that even the "least sophisticated consumer" could discern from the McKenzie notice that E.A. Uffman did not represent itself to be a credit-reporting agency and that it was seeking only to collect a debt, not threaten McKenzie's credit rating. McKenzie timely filed

2

a notice of appeal.

*DISCUSSION:*

This court reviews the district court's grant of summary judgment *de novo.*[1] McKenzie argues that the district court's grant of the defendant's motion for summary judgment was error because the evidence showed that E.A. Uffman neither "operate[d]" nor was "employed by" a credit reporting agency.  McKenzie asserts that E.A. Uffman's use of the name "Collections Department, Credit Bureau of Baton Rouge" is false and misleading as it clearly implies that such a relationship exists.

The FDCPA is designed "to eliminate abusive debt collection practices by debt collectors, to insure that those debt collectors who refrain from using abusive debt collection practices are not competitively disadvantaged, and to promote consistent State action to protect consumers against debt collection abuses".[2]  The FDCPA applies primarily to "debt collectors," defined as "any person who uses any instrumentality of interstate commerce or the mails in any business, the principal purpose of which is the collection of any debts, or who regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due

---

[1]*Topalian v. Ehrman,* 954 F.2d 1125, 1131 (5th Cir.1992).

[2]§ 1692(e); *Taylor v. Perrin, Landry, deLaunay & Durand,* 103 F.3d 1232, 1234 (5th Cir.1997).

another".[3]  It is undisputed that E.A. Uffman is a "debt collector" within the meaning of the Act.

"The FDCPA prohibits debt collectors from, *inter alia,* using any false, deceptive, or misleading representation or means in connection with the collection of any debt."[4]  "The false representation or implication that a debt collector operates or is employed by a consumer reporting agency" violates the FDCPA.[5]  A "consumer reporting agency" is "any person which, for monetary fees ... regularly engages in whole or in part in the practice of assembling or evaluating consumer credit information or other information on consumers for the purpose of furnishing consumer reports to third parties...."[6]  It is undisputed that the Credit Bureau is a "consumer reporting agency" within the meaning of the Act.

The relevant evidence adduced in support of the parties' summary-judgment motions may be summarized as follows:  The McKenzie notice contained scant information.  It indicated, in bold print at the top of the notice, that the debt collector was the "Collection Department, Credit Bureau of Baton Rouge" and stated:

> THIS ACCOUNT HAS BEEN LISTED WITH THIS OFFICE FOR IMMEDIATE COLLECTION.   THIS NOTICE HAS BEEN SENT TO YOU BY THIS

---

[3]§ 1602a(6);  *Taylor,* 103 F.3d at 1234.

[4]*Taylor,* 103 F.3d at 1234;  *see* § 1692e.

[5]§ 1692e(16) (emphasis added).

[6]§ 1681a(f).

4

COLLECTION AGENCY.  THIS IS AN ATTEMPT TO COLLECT A DEBT AND ANY INFORMATION OBTAINED WILL BE USED FOR THAT PURPOSE.  IF PAID IN FULL TO THIS OFFICE ALL COLLECTION ACTIVITY WILL BE STOPPED.

In his deposition, Glenn Uffman testified that in 1948 his father, Elmer Uffman, had signed an agreement with the Credit Bureau by which he would operate the Credit Bureau's collection department.  Elmer Uffman had been hired as the Executive Vice President or General Manager of the Credit Bureau and had discovered that it had an inactive collection department.  The Credit Bureau accepted Elmer Uffman's offer to run the department. Through the 1948 agreement, the Credit Bureau leased to Elmer Uffman the name "Credit Bureau of Baton Rouge" and assigned to him all of its collection business.  In return, the Credit Bureau would provide Elmer Uffman credit reports free of charge.

In 1957, Glenn Uffman began working for Elmer Uffman, who was doing business as "the Collection Department, Credit Bureau of Baton Rouge" and operating as a sole proprietorship.  In 1989, Glenn Uffman incorporated the business as E.A. Uffman;  Glenn Uffman was President and Secretary/Treasurer.  As of 1994, E.A. Uffman continued to lease and do business under the name "Collection Department, Credit Bureau of Baton Rouge" and it remained in the "debt collection business".  E.A. Uffman did not use the name E.A. Uffman for "trade purposes".  It had registered with the Louisiana Secretary of State under the trade name "Collection Department, Credit Bureau of Baton Rouge."  In the

5

white pages of the telephone book, E.A. Uffman was listed as the Collection Department for the Credit Bureau.

The "shareholders" of the Credit Bureau were local merchants. The Credit Bureau was in the business of furnishing consumer credit reports. In return for the lease of the name "Credit Bureau", E.A. Uffman paid the Credit Bureau five percent of its debt-collection commissions. E.A. Uffman was not involved in preparing consumer credit reports.

No one associated with the Credit Bureau supervised any of E.A. Uffman's 23 employees or had the power to discharge or discipline them. The Credit Bureau did not compensate or provide benefits to E.A. Uffman employees. There are no shared employees. Since E.A. Uffman's incorporation in 1989, the Credit Bureau had not referred any collection accounts to E.A. Uffman. E.A. Uffman's place of business was in the Credit Bureau's building, where it leased office space from the Credit Bureau.

Clearly, E.A. Uffman does not operate a credit reporting agency. E.A. Uffman argues that it has not violated § 1692e(16) because it is "employed by" the Credit Bureau as the Credit Bureau's "Collection Department". E.A. Uffman relies on two district court cases to support its position.

In *Catherman v. Credit Bureau of Greater Harrisburg*,[7] the court held that the defendant, a credit bureau with both reporting

---

[7] 634 F.Supp. 693 (E.D.Pa.1986).

and collection divisions, had not violated § 1692f when its two collection notices to the plaintiff consumer suggested that she might endanger her credit rating if she did not immediately pay her debt.[8] The court concluded that the defendant had not misrepresented itself as a credit reporting agency under § 1692e, because the defendant *did* operate a credit-reporting division.[9] The court ruled that the effect of the collection notices was not "false, deceptive, unfair or unconscionable", because the notices only reminded her—quite accurately—that "if the past debt is not paid there is likely to be an adverse effect upon a future ability to obtain credit".[10]

In *Wright v. Credit Bureau of Georgia,*[11] the defendant was a credit bureau that also acted as a debt-collection service. The district court held that the defendant had not violated § 1692e through the "prominent use" in its collection notices of its identity as a credit bureau.[12] The court reasoned:

> Although the use of the term "credit bureau' may indeed cause a consumer to conclude that CBI is a credit reporting agency capable of affecting the consumer's credit rating, the text of each letter sent by the defendants and the appearance of the name "CBI COLLECTIONS' at the bottom of each letter and on the

---

[8]*Id.* at 694-95.

[9]*Id.* at 695.

[10]*Id.* at 695-96.

[11]555 F.Supp. 1005 (N.D.Ga.1983).

[12]*Id.* at 1006.

7

return envelope sufficiently inform[ed] the consumer that he ha[d] received only a dunning letter and not a threat to relay credit information to a credit reporting agency....  [T]he letters convey no specific threat greater than the well-known fact ... that a failure to pay one's bills will affect his ability to obtain credit in the future....[13]

Assuming those cases are correctly decided, both *Catherman* and *Wright* are distinguishable from the instant case.  In each of those cases, the credit bureau itself indisputably operated a debt collection service.  In this case, the relationship between the Credit Bureau and E.A. Uffman is far more tenuous.

In *Taylor,* this court observed that "the most widely accepted tests for determining whether a collection letter contains false, deceptive, or misleading representations are objective standards based on the concepts of the "least sophisticated consumer' or the "unsophisticated consumer' ".[14]  "[T]he debt collector's representations, notices and communications to the consumer must be viewed objectively from the standpoint" of either the "least sophisticated consumer' or an "unsophisticated consumer'."[15]  In *Taylor,* this court declined to adopt a specific standard because the collection letter sent in that case was "deceptive and misleading under either standard".[16]

---

[13]*Id.* at 1007.

[14]*Taylor,* 103 F.3d at 1236.

[15]*Id.*

[16]*Id.*

8

Here, again, we decline to adopt a specific standard. Clearly, under either standard, the McKenzie notice represents or implies that the debt collector is employed by a credit reporting agency. In fact, the name does more than that, the name implies that the debt collector is a department within the Credit Bureau itself. Though the language of the notice refers to "this office" and "this collection agency", neither an "unsophisticated consumer" nor the "least sophisticated consumer" would discern from this language that the debt collector is actually a wholly distinct entity from the Credit Bureau.

E.A. Uffman contends that the long-time "affiliation" between E.A. Uffman and the Credit Bureau legitimizes the McKenzie notice. Examination of the facts reveals, however, that their "affiliation" is far more tenuous than the relationships contemplated by Congress in § 1692e(16). E.A. Uffman does not operate the Credit Bureau and is not employed by the Credit Bureau. Essentially, E.A. Uffman has licensed the use of the name "COLLECTION DEPARTMENT, CREDIT BUREAU OF BATON ROUGE" for a five percent royalty on every collection. Undoubtedly, E.A. Uffman enjoys a competitive advantage over collection agencies with less imposing letterheads. In drafting the FDCPA, Congress intended "to insure that those debt collectors who refrain from using abusive debt collection practices are not competitively disadvantaged".[17] We cannot permit the naked license

---

[17]15 U.S.C. § 1692; *Taylor v. Perrin, Landry, deLaunay & Durand,* 103 F.3d 1232, 1234 (5th Cir.1997).

of a credit bureau's name to circumvent the policies of the FDCPA and the specific prohibition of § 1692e(16).  The district court's grant of the defendant's motion for summary judgment was error.

Accordingly, the district court's order granting the defendant's motion for summary judgment is REVERSED and this case is REMANDED for further proceedings.