# In the

# United States Court of Appeals

## For the Seventh Circuit

———————

No. 04-3253

CHARLES H. SANDERSON,

*Plaintiff-Appellant,*

v.

CULLIGAN INTERNATIONAL COMPANY,

*Defendant-Appellee.*

———————

Appeal from the United States District Court for the
Southern District of Indiana, Indianapolis Division.
No. IP 00-0459-C H/K—**David F. Hamilton**, *Judge.*

———————

ARGUED APRIL 1, 2005—DECIDED JULY 11, 2005

———————

Before EASTERBROOK, MANION, and ROVNER, *Circuit Judges.*

EASTERBROOK, *Circuit Judge.* Magnatech Corporation sells "magnetic water conditioners." Its sole stockholder brought this suit in his own name, contending that Culligan, a manufacturer of chemical and filtration systems of water purification, violated the federal antitrust and trademark laws by asserting that magnetic systems don't work. The suit might have been dismissed immediately, for Magnatech rather than Sanderson is the appropriate plaintiff. See, e.g., *In re Industrial Gas Antitrust Litigation,*

681 F.2d 514, 519-20 (7th Cir. 1982); *Mid-State Fertilizer Co. v. Exchange National Bank*, 877 F.2d 1333, 1335-36 (7th Cir. 1989). Sanderson does not claim to be injured as a consumer; his injury (a reduction in the value of his stock) is derivative of Magnatech's. Cf. *Illinois Brick Co. v. Illinois*, 431 U.S. 720 (1977). But Culligan did not catch this, and it is not the sort of jurisdictional problem that a court must notice on its own. See *Associated General Contractors v. California State Council of Carpenters*, 459 U.S. 519, 535 & n.31 (1983); *Hammes v. AAMCO Transmissions, Inc.*, 33 F.3d 774, 778 (7th Cir. 1994).

Instead Culligan defended on the merits, prevailing in a series of decisions. First the district court dismissed the antitrust allegations for failure to state a claim on which relief may be granted. 2001 U.S. Dist. LEXIS 8309 (S.D. Ind. May 29, 2001). Then it granted summary judgment on the Lanham Act claim to the extent that any of the statements preceded the period of limitations. 2002 U.S. Dist. LEXIS 19212 (S.D. Ind. Sept. 20, 2002). Finally it terminated the case, again by summary judgment, because none of the remaining statements fits the Lanham Act's definition of advertising. 2004 U.S. Dist. LEXIS 15671 (S.D. Ind. July 23, 2004).

Because the case ended without a trial, we must assume that magnetic systems can reduce lime scale deposits in pipes, the only benefit that Magnatech and its Superior Manufacturing Division claim for their products. (They do not contend that magnetic treatment removes minerals or biological agents from water.) On a motion to dismiss under Fed. R. Civ. P. 12(b)(6), even highly unlikely propositions must be taken as given. See, e.g., *Miles v. Augusta City Council*, 710 F.2d 1542 (11th Cir. 1983) (assuming, as the complaint alleged, that cats can talk). And the party opposing summary judgment receives the benefit of all reasonable inferences. Some evidence in the record suggests that magnetic systems can reduce lime buildup, though

whether this evidence, which has not been published in a scientific journal, meets the standard of Fed. R. Evid. 702 is doubtful.

Lime deposits in plumbing are calcium carbonate ($CaCO_3$), which is non-magnetic. Sanderson's lawyer could not explain why magnets affect nonferrous materials, and the unpublished study to which his brief refers at length does not do so either. This study finds that non-chemical devices can reduce the hardness of calcium carbonate build-up in industrial air-conditioning systems, but *only* when the water moves faster that 2.3 meters per second— and even so the paper offers Sanderson little support, for it lumps together a variety of non-chemical approaches and does not report separately on the sort of magnetic systems that Magnatech sells. See Young I. Cho, *Efficiency of physical water treatments in controlling calcium scale accumulation in recirculating open cooling water system*, American Society of Heating, Refrigerating & Air-Conditioning Engineers Research Project 1155-TRP (May 29, 2002). Positive reports about magnetic water treatment are not replicable; this plus the lack of a physical explanation for any effects are hallmarks of junk science. For a review of the literature see John S. Baker & Simon J. Judd, *Magnetic amelioration of scale formation*, 30 Water Research 247 (1996). Nonetheless, we shall indulge the assumption that adverse statements about Magnatech's products are calumnies.

Sanderson's antitrust claim rests on §1 of the Sherman Act, 15 U.S.C. §1, and fails at the threshold because Sanderson does not contend (in the complaint or anywhere else) that Culligan has conspired with other producers to set price or output, or that it possesses the sort of market power that would lead to condemnation under the Rule of Reason. See *National Collegiate Athletic Association v. University of Oklahoma*, 468 U.S. 85 (1984). Recast under §2 it would fare no better, because Sanderson does not contend that Culligan possesses monopoly power or that

bad-mouthing Magnatech's products creates a dangerous probability of monopolization. See *Spectrum Sports, Inc. v. McQuillan*, 506 U.S. 447 (1993).

The problem is not that the pleading is short, as Fed. R. Civ. P. 8 contemplates. Complaints need not allege facts or legal theories. See *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506 (2002); *Bartholet v. Reishauer A.G. (Zürich)*, 953 F.2d 1073 (7th Cir. 1992). Sanderson's problem, rather, is that his complaint and other papers demonstrate that the claim rests on a belief that the antitrust laws forbid all "unfair" business tactics, without regard to the likelihood that the adversary will achieve and retain a monopoly at consumers' expense. Not at all. The antitrust laws protect consumers, not producers. They favor competition of all kinds, whether or not some other producer thinks the competition "fair." Much competition is unfair, or at least ungentlemanly; it is designed to take sales away from one's rivals. There is no obligation to be kindly or cooperative toward other producers. See, e.g., *Verizon Communications Inc. v. Law Offices of Curtis V. Trinko, LLP*, 540 U.S. 398 (2004). Some laws, including the Lanham Act, condemn particular tactics deemed "unfair"; the Sherman Act is not among these laws.

Antitrust law condemns practices that drive up prices by curtailing output. See, e.g., *NCAA*, 468 U.S. at 103-07; *Broadcast Music, Inc. v. CBS, Inc.*, 441 U.S. 1, 1920 (1979). False statements about a rival's goods do not curtail output in either the short or the long run. They just set the stage for competition in a different venue: the advertising market. *Schachar v. American Academy of Ophthalmology, Inc.*, 870 F.2d 397 (7th Cir. 1989), another antitrust case based on a supposed commercial falsehood, makes this point forcefully. We observed:

> Warfare among suppliers and their different products *is* competition. Antitrust law does not compel your competitor to praise your product or sponsor your work. To

require cooperation or friendliness among rivals is to undercut the intellectual foundations of antitrust law. Unless one group of suppliers diminishes another's ability to peddle its wares (technically, reduces rivals' elasticity of supply), there is not even the beginning of an antitrust case, no reason to investigate further to determine whether the restraint is "reasonable".

870 F.2d at 399 (citations omitted; emphasis in original). Magnatech remains free to sell to all who can be persuaded that magnets reduce lime buildup; Culligan faces competition from dozens of other producers that use different, though more conventional, technologies to filter, purify, or reduce mineral content in water.

Sanderson contends that *Schachar* is incompatible with *American Society of Mechanical Engineers, Inc. v. Hydrolevel Corp.*, 456 U.S. 556 (1982), but *Schachar* pointed out that *Hydrolevel* depended on something missing there (and here): an enforcement mechanism. Some producers persuaded an engineering society to write standards in such a way that only their products were acceptable. Because many governmental bodies made compliance with the standards mandatory (they were incorporated into building codes and other legal mandates), this curtailed the available supply (rivals' products having been knocked out) and could have enabled the conspirators to raise prices.

Nothing comparable is alleged here. Although magnetic devices were at one time banned from some trade shows (supposedly at Culligan's behest), that ban was lifted in the mid-1990s and is outside the period of limitations, see 15 U.S.C. §15(b)—and anyway is some distance from the legal restraint that led to *Hydrolevel*. Sanderson also maintains that Culligan persuaded the Water Quality Association, a trade group, to withhold its "Gold Seal" from magnetic systems. No unit of government incorporates this "Gold Seal" into any legal requirement; it is just a marketing

device. Anheuser-Busch might as well claim that by selling a beer called "Blue Ribbon" Pabst has violated the antitrust laws, unless Pabst is willing to bestow the same "Blue Ribbon" on Budweiser. What producers say about each others' goods in an effort to sway consumers is competition in action. Some other law may require judicial intervention in order to increase the portion of truth in advertising; the Sherman Act does not. Commercial speech is not actionable under the antitrust laws. As we put it in *Schachar*: "There can be no restraint of trade without a restraint." 870 F.2d at 397. See also *Santana Products, Inc. v. Bobrick Washroom Equipment, Inc.*, 401 F.3d 123, 133 (3d Cir. 2005).

As for Sanderson's claim under §43(a) of the Lanham Act, 15 U.S.C. §1125(a)(1)(B), the district court held that it founders on the federal statute's limited scope. Section 43(a) covers only "commercial advertising or promotion". The district court concluded that Sanderson had just three examples of supposedly false statements within the period of limitations, and that all three were person-to-person communications at trade shows. We held in *First Health Group Corp. v. BCE Emergis Corp.*, 269 F.3d 800, 804 (7th Cir. 2001), that §43(a) addresses "promotional material disseminated to anonymous recipients". This leaves to state law the evaluation of oral statements and brochures at trade shows. Sanderson does not contend that the statements of which he complains are "commercial advertising or promotion" as *First Health Group* understood that phrase. Indeed, he does not mention that opinion, though it was the mainstay of the district court's decision.

For that matter, Sanderson does not contend that any of the statements within the period of limitations was uttered by Culligan. He attributes these oral statements and handouts to its franchisees or distributors and says that Culligan must be vicariously liable because it insists that they live up to high standards of business ethics. That Culligan tries to *prevent* its distributors from committing business torts, and reserves the right to stop selling to

anyone who does, hardly makes any of the distributors its agent for the purpose of defaming rivals. Unsuccessful efforts at prevention do not imply agency or an assumption of liability. If Culligan told its distributors to avoid reckless driving and to obey all state laws, this would not make it vicariously liable for their auto accidents or oblige it to pay if a distributor shot his neighbor's dog for barking late at night.

Sanderson pursued some claims under state law, which for reasons we have given is the only applicable body of legal norms. The district judge granted summary judgment to Culligan on all of the state-law claims, and Sanderson does not contest this decision on appeal. His arguments have been limited to the frivolous claims under federal law. He should be thankful that Culligan has not filed a cross-appeal from the district court's order denying its motion for sanctions. Neither the Sherman Act nor the Lanham Act is designed to throw into federal courts all disputes about the efficacy of competing products. Whether magnetic water conditioners work is a question about science, not law, and scientific disputes must be resolved by scientific means.

AFFIRMED

A true Copy:

Teste:

_____
*Clerk of the United States Court of
Appeals for the Seventh Circuit*