**BRIGGS & STRATTON CORP., Plaintiff,**

v.

**KOHLER CO., Defendant.**

**No. 05–C–0025–C.**

United States District Court,
W.D. Wisconsin.

Dec. 14, 2005.

David L. Debruin, Milwaukee, WI, for Plaintiff.

David J. Harth, Heller Ehrman White & McAuliffe, Madison, WI, for Defendant.

## OPINION AND ORDER

CRABB, District Judge.

In this civil action, plaintiff Briggs & Stratton Corp. has accused defendant Kohler Co. of manufacturing and selling a single-cylinder internal combustion engine that infringes plaintiff's United States Patent No. 6,382,166 (the '166 patent) and United States Patent No. 6,460,502 (the '502 patent). Defendant has asserted six counterclaims, alleging non-infringement, patent invalidity and violations of §§ 1 & 2 of the Sherman Act, Wisconsin antitrust laws and the Wisconsin common law of unfair competition. Jurisdiction is present under 28 U.S.C. §§ 1331 and 1367.

Now before the court is plaintiff's motion to strike the portion of defendant's antitrust counterclaims that relate to the horsepower ratings of plaintiff's engines or, in the alternative, to issue a protective order precluding defendant from engaging in discovery relevant to the horsepower ratings of plaintiff's engines. (Plaintiff has also moved the court to dismiss all antitrust counterclaims dependent upon plaintiff's allegedly misleading horsepower ratings. However, because defendant contends that none of its counterclaims depends solely upon plaintiff's allegedly deceptive practices, I will regard the request to dismiss as unnecessary.) Defendant has not demonstrated that the allegedly misleading horsepower ratings are connected in any way to plaintiff's alleged violation of §§ 1 and 2 of the Sherman Act. Therefore, I will strike as immaterial ¶¶ 22(e), 29(c) and 35(c) of defendant's second amended answer and counterclaims. Because the allegations will be stricken,

plaintiff's request for a protective order will be denied as moot.

## A. *Procedural History*

On April 15, 2005, defendant filed its first amended answer and counterclaims, in which it alleged that plaintiff violated § 2 of the Sherman Act by

... willfully maintain[ing] its monopoly power in the relevant market by illegal anticompetitive and exclusionary acts affecting a substantial volume of commerce, including, but not limited to, the following:

a) bundling rebates Briggs & Stratton pays to both its direct purchasers ... and to retailers that sell completed lawn tractors directly to consumers; and

b) entering into exclusionary contracts that expressly or effectively require direct purchasers and/or retailers to deal exclusively with Briggs & Stratton and not with its competitors, including Kohler.

Dft.'s 1st Am. Counterclaims, dkt. # 12, at 7. Plaintiff moved to dismiss these claims on May 9, 2005. In an order dated July 20, 2005, I denied plaintiff's motion, finding that defendant's allegations of price bundling and formation of exclusionary contracts stated a Sherman Act claim under the liberal pleading requirements of Fed. R.Civ.P. 8(a). Order dated July 20, 2005, dkt. # 33, at 6–7.

On September 30, 2005, defendant filed its second amended counterclaims, in which it asserts that plaintiff violated § 2 of the Sherman Act by

... willfully maintain[ing] its monopoly power in the relevant market by illegal anticompetitive and exclusionary acts affecting a substantial volume of commerce, including, but not limited to, the following:

a) bundling rebates Briggs & Stratton pays to both its direct purchasers ... and to retailers that sell completed lawn tractors directly to consumers;

b) entering into exclusionary contracts that expressly or effectively require direct purchasers and/or retailers to deal exclusively with Briggs & Stratton and not with its competitors, including Kohler;

c) conditioning favorable pricing and other competitive terms on o[riginal] e[quipment] m[anufacturer]s and retailers limiting their purchases of engines or finished products containing engines manufactured by competitors of Briggs & Stratton, or other conditions designed to maintain Briggs & Stratton's monopoly power;

d) various acts designed to control which o[riginal] e[quipment] m[anufacturer] sells lawn mowers to which retailer, including quoting or charging different prices to the same o[riginal] e[quipment] m[anufacturer] for the same engine depending upon the retailer selling the finished lawn mower; quoting or charging different prices for the same engine depending on the o[riginal] e[quipment] m[anufacturer] involved; and offering to enter into or entering into so-called "joint ventures" with certain o[riginal] e[quipment] m[anufacturer]s that would determine which o[riginal] e[quipment] m[anufacturer]s sell lawn mowers incorporating Briggs & Stratton engines to which retailers;

e) retaliating against o[riginal] e[quipment] m[anufacturer]s and/or retailers that purchase lawn mower engines or finished lawn mowers containing engines not manufactured by Briggs & Stratton by imposing price increases or taking other actions against them; and

f) using misleading horsepower ratings to deter or limit competition from other engine manufacturers.

Dft.'s 2d Am. Counterclaims, dkt. # 96, at 7–8.

Defendant asserts that if plaintiff has not already violated § 2 of the Sherman Act, it has attempted to do so by engaging in the activities listed above, including using misleading horsepower ratings to deter or limit competition from other engine manufacturers. Dft.'s 2d Am. Counterclaims., dkt. # 96, at 9. In addition, defendant contends that plaintiff has violated § 1 of the Sherman Act by engaging "in unreasonable agreements in restraint of trade and other anticompetitive acts and practices affecting a substantial volume of commerce," including using misleading horsepower ratings to deter or limit competition from other engine manufacturers. Dft.'s 2d Am. Counterclaims, dkt. # 96, at 10–11.

### B. *Relevance of Plaintiff's Horsepower Ratings*

Under Fed.R.Civ.P. 12(f), a court "may order stricken from any pleading any insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." Plaintiff has moved to strike defendant's allegation that it has used misleading horsepower ratings to deter or limit competition from other engine manufacturers, contending that the allegation is immaterial to plaintiff's antitrust counterclaims. Defendant concedes that on its own plaintiff's use of allegedly misleading horsepower ratings does not constitute a violation of the antitrust laws. Nevertheless, defendant argues, plaintiff's false statements about its own products can be considered as one element in a larger course of anticompetitive conduct that violates §§ 1 and 2 of the Sherman Act.

■ Motions to strike are generally disfavored because they are seen as tools to delay litigation. *Heller Financial, Inc. v. Midwhey Powder Co.*, 883 F.2d 1286, 1294 (7th Cir.1989). However, where a motion to strike "removes unnecessary clutter from the case, [it] serve[s] to expedite, not delay." *Id.* Therefore, when the pleading

is redundant or the statements are immaterial, the court has the power to strike the offending parts. *Hardin v. American Electric Power*, 188 F.R.D. 509, 511 (S.D.Ind.1999). Because defendant's allegations regarding the horsepower of plaintiff's engines are immaterial to its antitrust counterclaims, they will be stricken.

### 1. *Governing law*

■ As an initial matter, I note that the parties have presented starkly contrasting versions of the law governing defendant's antitrust counterclaims. Plaintiff relies almost exclusively on the recent opinion by the Court of Appeals for the Seventh Circuit in *Sanderson v. Culligan International Co.*, 415 F.3d 620, 623 (7th Cir.2005), while defendant asserts that the court should be guided primarily by the decision of the Court of Appeals for the District of Columbia in *United States v. Microsoft Corp.*, 253 F.3d 34 (D.C.Cir.2001). For the reasons stated below, I conclude that *Sanderson* governs this case.

In *Sanderson*, 415 F.3d at 621, the court was asked to determine whether a district court erred when it dismissed the plaintiff's antitrust claims for failure to state a claim under Fed.R.Civ.P. 12(b)(6). Sanderson alleged that the defendant violated § 1 of the Sherman Act by falsely asserting that his company's magnetic water filtration system did not work. *Id.* He did not contend that the defendant possessed monopoly power or that the defendant had violated the antitrust laws through any means other than the allegedly defamatory advertising. *Id.* at 622. The court held that Sanderson's claim failed under the Sherman Act because "commercial speech is not actionable under the antitrust laws." *Id.* at 624.

Defendant attempts to distinguish *Sanderson* from the present case by emphasizing that it has alleged that plaintiff pos-

sesses monopoly power and that plaintiff has engaged in other activities (such as bundling rebates and entering into exclusive contracts) that are cognizable under the antitrust laws. Because Sanderson did not make such allegations, defendant contends that the antitrust doctrine discussed in *Sanderson* is inapplicable to this case. Defendant's argument is unavailing.

As I stated in the order dated July 20, 2005, defendant has stated counterclaims cognizable under the Sherman Act. However, the fact that some of defendant's allegations support its Sherman Act counterclaims does not mean that *any* allegations it makes will be relevant to those claims. If plaintiff's alleged false advertising is not connected intrinsically to a violation of antitrust law, it is not relevant to the antitrust claims at issue in this case. Appending an irrelevant allegation to a counterclaim containing legitimate allegations does not transform the raven into a swan. In the absence of facts connecting plaintiff's allegedly deceptive practices to bona fide violations of antitrust law, *Sanderson* remains on point.

*Microsoft*, 253 F.3d at 34, the case upon which defendant relies, illustrates the necessity of connecting an allegedly false statement to a violation of antitrust law. In *Microsoft*, 253 F.3d at 76, the Court of Appeals for the District of Columbia addressed whether § 2 of the Sherman Act was violated when Microsoft, a company with a monopoly in the personal computer operating system market, intentionally deceived developers of Java, a set of "middleware" technologies that posed a potential threat to the dominance of Microsoft's Windows operating system. *Id.* at 74. Microsoft led Java programmers to believe that if they developed Java using tools designed by Microsoft, the technology would run well on any computer operating system. *Id.* at 74, 76. In fact, the program could be run successfully only by using Microsoft's Windows operating system. *Id.* at 76. By relying on Microsoft's misrepresentations, Java developers were forced to rely on Microsoft's operating system and were excluded from marketing their program to users of other operating systems. The court concluded that Microsoft's intentional deception was designed "to thwart Java's threat to Microsoft's monopoly in the market for operating systems" and therefore was exclusionary in violation § 2 of the Sherman Act. *Id.* at 77.

Unlike the Java developers in *Microsoft*, defendant does not (and cannot) assert that it has been excluded from the market by plaintiff's allegedly misleading advertising. Defendant has not shown how plaintiff's claims regarding the power of its engines reduce the availability of defendant's products or otherwise exclude defendant from the market. The *Microsoft* case is therefore distinguishable.

### 2. *Monopolization*

■ The offense of monopoly under § 2 of the Sherman Act has two elements: (1) the possession of monopoly power in the relevant market and (2) the willful acquisition or maintenance of that power as distinguished from growth or development as a consequence of a superior product, business acumen, or historic accident. *Eastman Kodak Co. v. Image Technical Services, Inc.*, 504 U.S. 451, 481, 112 S.Ct. 2072, 119 L.Ed.2d 265 (1992). Defendant has alleged that plaintiff has monopoly power in the market of small motor engines or, in the alternative, has attempted to obtain such power. Therefore, with respect to these counterclaims, the question is whether defendant can show that plaintiff's use of allegedly "misleading horsepower ratings to deter or limit competition" constituted an "illegal anticompetitive and exclusionary act."

"In order for a practice to be exclusionary, it must harm the competitive process and thereby harm consumers. Harm to one or more *competitors* will not suffice for a § 2 violation." *Morris Communications Corp. v. PGA Tour, Inc.*, 364 F.3d 1288, 1294 (11th Cir.2004) (emphasis included). The antitrust laws protect consumers, not producers, and therefore favor all kinds of competition, even those that seem "ungentlemanly." *Sanderson*, 415 F.3d at 623. Although some laws condemn particular "unfair" tactics, the Sherman Act is not among them. *Id.*

If defendant's allegations are true, they indicate that plaintiff has engaged in deceptive and unseemly practices; however, such practices are not relevant to the law of antitrust unless a party alleges that the practices have been used to harm to consumers by curtailing output and driving up prices. *Id.* Because defendant has not raised any argument that plaintiff's use of allegedly misleading horsepower ratings is linked to any exclusionary practice, the allegations contained in ¶¶ 22(e) and 29(c) of defendant's second amended answer and counterclaims will be stricken.

### 3. *Restraint of trade*

To violate § 1 of the Sherman Act, there must be evidence that a party has made a contract or combined or conspired to unreasonably restrain trade or commerce. As the oft-cited phrase goes, "There can be no restraint of trade without a restraint." *Schachar v. American Academy of Ophthalmology, Inc.*, 870 F.2d 397, 397 (7th Cir.1989) (Easterbrook, J.). A restraint cannot exist unless plaintiff's actions have reduced the elasticity of defendant's supply. *Id.* at 399; *Sanderson*, 415 F.3d at 623. Without such an allegation, "there is not even the beginning of an antitrust case." *Id.*

How would plaintiff's use of allegedly misleading horsepower ratings restrain trade? Defendant has offered no answer to this question and none is apparent. Therefore, because defendant has not shown how plaintiff's misleading horsepower allegation is relevant to its claim that plaintiff violated § 1 of the Sherman Act, the allegations contained in ¶ 35(c) of defendant's second amended answer and counterclaims will be stricken.

### ORDER

IT IS ORDERED that plaintiff's motion is

1. GRANTED with respect to its request to strike ¶¶ 22(e), 29(c) and 35(c) of defendant's second amended answer and counterclaims; and

2. DENIED as moot with respect to its request for a protective order precluding discovery relating to the horsepower ratings of its engines.